# D. Vertner and Wife *v.* J. T. McMurran, Administrator, *et al.*

The final account of an administrator has not the conclusive effect of a *judicial sentence* between the administrator and the distributees of the estate, and does not bar them from proceeding in chancery to open, falsify and surcharge the account upon sufficient grounds.

Although the statute requires an administrator to give notice of his intention to present his final accounts, by posting up notices in three public places in the county, or by advertising the same in a public newspaper three weeks, yet in practice, the making a final settlement with a probate court is usually a proceeding purely *ex parte,* and has not generally been regarded as assuming the character of a judicial controversy.

The constitution of this state, article 4, section 18, provides that "a court of probate shall be established in each county in this state, with jurisdiction in all matters testamentary, and of administration in orphans' business, and the allotment of dower, &c." This provision cannot be construed as taking away from the court of chancery and conferring exclusively upon the probate court any matter of equity jurisdiction which originally belonged to the courts of equity, nor as prohibiting a court of chancery from interfering where the court of probate was inadequate to the relief sought. Whenever there is no remedy, or an imperfect one, in the probate court, although the subject matter be testamentary, or of administration, the court of chancery may rightfully interfere.

This bill states that Lyman Harding, the former husband of Elizabeth Harding, died, leaving a large estate, real and personal, and that his said wife and an only son, Winthrop S. Harding, were the only persons entitled to distributive shares of the said estate. That she intermarried afterwards with said Daniel Vertner, and in 1828 and 1829 paid to the said Winthrop the whole of his claim to his father's estate, and took from him a release of all his interest in said estate. That all creditors have been fully paid, and the said Daniel Vertner, and his wife, the said Elizabeth, are the only persons now interested in the estate. That on the death of the said Lyman Harding, she, the said Elizabeth, and William B. Griffith, became joint administrator and administratrix of the personal estate of the said Lyman, by letters issued from the probate court of Adams county, and that said Minor and Chambers

became their securities in the administration bond. That she entrusted the sole and entire administration of the said estate to said Griffith, who made out, presented and passed accounts contained in exhibits A, B, C, D, by the orphan's court, without her participation or knowledge. That A, B and C appear made out in the name of said Griffith alone, but account D in their joint names, yet she charges she had nothing to do with making it out, presenting or passing it, and it was done without her knowledge. That in making out and passing said accounts, and particularly account D, which purports to be final, large mistakes and errors have occurred, to the prejudice of said estate in amount about nine thousand dollars, and for a specification of which errors and mistakes reference is made to exhibit G, made a part of the bill; and in support of said charge of errors and mistakes, reference is made to exhibits A, B, C, D, E, F, H, I, K, L, M and N, made part of the bill. Further states, that they believe it will appear by an inspection of the books of said Griffith that there are other large errors of money with which said estate should have been credited, but as an inspection of said books has been denied them, they cannot particularly specify said sums, or say to how much, in all, they amount.

The bill calls for a production of the books; prays that said accounts and the settlement of them may be opened and set aside, and complainants be permitted to surcharge and falsify the same, and that said McMurran, administrator of said Griffith, (who is stated in the bill to be dead, and said McMurran appointed his administrator,) may be decreed to pay over to complainants such sum or sums of money as, on a re-examination of said accounts, said Griffith may be found indebted to said Harding's estate.

Defendant McMurran, on 2d January, 1830, filed his plea and answer, and pleads the final account in the orphan's court as a bar to so much of the bill as seeks to surcharge and falsify said account, upon the errors and mistakes in the settlement of the account in the orphan's court, specified in the bill, and to the relief sought.

To that a demurrer is filed by complainant.

Answer admits the intermarriage of said Harding and said Elizabeth, but does not admit that she and said Winthrop were

12*

sole distributees, or that said Winthrop had released to said complainants all his interest in said estate, but requires it to be proved; denies that said accounts, A, B, C, D, were made out, presented and allowed without her personal knowledge; avers that she was fully informed of all said Griffith's acts and doings as administrator, and was furnished with copies of said accounts before they were presented and allowed by said court; that she had full notice of the settlement of the final account, and an opportunity to contest the same, and that said Winthrop was fully apprised thereof. (It is alleged in the bill that Winthrop was a minor under twenty-one years of age, when the final account was rendered and allowed.)

The answer also denies that there are other large errors, independent of said accounts, with which Harding's estate ought to be credited; avers that said Daniel had the inspection of the books at the office of the said administrator; avers that said Elizabeth, during their said joint administration, became largely indebted to said Griffith by advances made her and monies paid on her account, and at her request, connected with the administration of said estate, and at Griffith's death a balance of about three thousand seven hundred and thirty-eight dollars sixty-nine cents was due from her to Griffith, as per account B, annexed, which sum he believes is justly due from complainants, and prays that they may be decreed to pay it, or if the balance of five hundred and fifty dollars and twenty-three cents, upon settlement of said final account, marked D, was not settled in any way, that it be deducted from said sum of three thousand seven hundred and thirty-eight dollars, and the balance be paid to him, as administrator of said Griffith; admits that Griffith died in October, 1827, and defendant was appointed his administrator, and it thus appears that said Griffith lived about a year after settlement of his final account, during which time, defendant is informed and believes, he expressed a desire that if said Daniel or Winthrop had objections to his acts or settlements, they might be made known to him in his life time; as they might be easily explained by him, which would be almost impossible to any one after his death. Complainants remained silent, and apparently satisfied,

until after his death, when they commenced investigation of his accounts, and then proceedings against his estate.

The CHANCELLOR:

The bill is brought against the defendant, McMurran, as administrator of W. B. Griffith, deceased, who was administrator of Lyman Harding, deceased. The complainants claim as the distributees of said Harding, and seek to open the accounts rendered and settlement by said Griffith, as administrator of Harding, and to surcharge and falsify such accounts for the errors and mistakes alleged in the bill, and for a decree for such sum as, upon re-examination of said accounts, may be found due them from the estate of said Harding. The form of the pleadings renders it unnecessary to notice more in detail the allegations of the bill.

The defendant, McMurran, pleads the final account, marked A in complainants' bill, rendered and settled in the Orphans' court of Adams county by his intestate, Griffith, in bar of so much of the bill as seeks to surcharge and falsify such accounts and settlement upon the errors and mistakes specified in the complainants' bill, and in bar to all relief sought. This plea has been set down for argument by the complainants' counsel, and the only question raised is the sufficiency of the plea, which relies upon the order of the Orphans' court allowing the final account of Griffith as an adjudication of a competent tribunal, fixing and definitely settling his relations with the estate of his intestate, and as conclusive on the rights attempted to be asserted by the complainants.

The conclusiveness of a judicial decision depends upon different reasons, according to the character the proceeding assumes. Where the proceeding is upon matter of private litigation between party and party, and where the sentence directs something to be done, suffered or omitted by one party, its conclusive and binding effect rests upon the supposition that the parties have been fully and fairly heard upon their rights in controversy, and upon the policy of the law in putting an end to multiplied litigation for the same thing. This class of judicial proceedings presupposes parties before the court, either actually or constructively, presenting issues of law or of fact for decision, and that the court has jurisdiction over both the parties and subject matter.

Another class of judgments, rendered upon what is technically called a proceeding *in rem*, where the court, exercising a peculiar jurisdiction, pronounces upon matter of a public nature and interest, independently of any private party, and where the court condemns the thing to some particular use, and also upon principles of public policy, allowed to be final and conclusive, even against strangers to the original suit.

But, in both classes, the sentence or judgment must appear to be final upon the whole matter in controversy, in order to constitute a bar to further proceedings. The record of the Orphans' court must be found to partake of the character of the one or the other of these classes of judicial sentences, in order to make it conclusive upon the rights of the parties. Whether the proceeding in that court, in examining and allowing an administrator's account, is a judicial one, upon matter of *private litigation* between party and party, or, if not that, whether it be a proceeding *in rem*, will be best determined by a reference to the proceeding itself.

An administrator, in accounting with the probate court, proceeds upon the principle of stating an account between individuals, upon returning an inventory and appraisement, he stands charged with the amount which those instruments show the estate to be worth, and all acts done afterwards, in rendering accounts, are intended as discharges or credits, pursuing the process of making up a balance sheet until he renders a final account. This course seems to be intended as well for the purpose of insuring fidelity on the part of the administrator as to enable the court to determine when the business of the estate was at a close. These accounts are usually stated, arranged and balanced by the administrator himself, at his own private desk. It is true, that, before presenting his final account, he is required to post up notices of his intention at three public places in the county, or advertise the same in a public newspaper three weeks. Although the statute requires this notice, yet, in practice at least, the making a final settlement with the orphans' court is usually a proceeding purely *ex parte*, and has not been generally regarded as assuming the character of a judicial controversy. The plea avers notice, and, although the record does not show it, the plea having been set down for hear-

ing without replication, the notice is admitted. Is this notice intended as a service of a process to bring the parties into court? And does it give to the order of the orphans' court, simply allowing the account, the conclusive effect of a judicial sentence, as between the administrator and the distributees of the estate? I think not. If the publication made by the administrator is to be considered as conveying absolute notice, and as a sort of service of process, it must apply equally to distributees residing in the county where administration was taken, as to those who may reside in Maine or Europe; for there is no reservation in favor of non-residents: and yet it is obvious that the manner and time of publication could not possibly convey notice to the latter. To hold that an administrator's account, rendered under such circumstances, should be final and conclusive, would be to subvert the first principles of justice; and to ascribe to the law consequences which the legislature could never have intended. Under such circumstances, to allow an administrator to hold, as his own, assets for which he had failed to account, would be to violate all the principles upon which the conclusiveness of judicial sentences repose. I consider the notice as merely directory to the administrator, and not as having the obligatory effect of the service of process on creditors and distributees of the estate, but as intended merely to afford them an opportunity of scrutinizing the account without making them actually or constructively parties to the proceeding, giving them the optional right of appearing and resisting the proposed settlement or not.

The proceeding of the orphans' court does not state the complainants as parties, nor does it profess to adjudge any thing as between them and the administrator. In matter of private litigation, no one, in general, can be bound by a judgment, unless he be a party to the suit, or in privity with the party. 1 Starkie on Ev. 190.

A judgment against a defendant, without summons or notice, has been repeatedly held to be absolutely void. 1 Starkie on Ev. 215, note.

And to determine who are parties, reference must be had to the record itself. No one can be considered as a party to a judicial

proceeding, so as to be bound by the judgment, but those who appear by the record to be such. 1 Marsh. R. 526.

In a case reported in 3 Leigh, 407, where the bill was filed to surcharge and falsify an executor's accounts, which had been audited before the commissioners of the county court, and where these accounts had been returned to the court, *approved* and ordered to be recorded, and where it appeared that the complainants were present when the account was stated, and were urged to state any objections that occurred, the supreme court of Virginia, on appeal from chancery, held that the presence of legatees at the settlements was no objection to a bill in chancery to surcharge and falsify the accounts so settled. Judge Tucker, in delivering the opinion of the court, in adverting to this feature of the case, remarked that the complainants, "though present, if they were without counsel, the court would not necessarily infer that they were competent to the detection of the errors which, in the settlement of an executor's account, may escape even the most practiced eye." The court further held, in that case, that the complainant might show that the account was erroneous upon its face, and, without controverting the items themselves, might show that they were so arranged as to produce results injurious to them: thus holding that the action of the county court, even as to the matter *actually passed upon*, was not conclusive.

It is true that the statute of Virginia does not require notice to be given, but this can make no difference in the application of the principle, as the appearance of the parties, in the case referred to, would, upon a well settled principle of practice, amount to a waiver of notice or process.

The settlement of an administrator's account by the orphans' court, to have the conclusive effect contended for by the defendant, must be shown to be a judicial sentence, judgment or decree, either upon general principles or by virtue of the statute under which it was had. That it is not such, upon general principles, I think, has been sufficiently shown; and that it is not such by the statute, I take to be evident from the character of the action required at the hands of the court when such account is presented for examination and allowance. The simple order which, by the statute,

the court is required to make, is that the account be allowed, Rev. p. 52, sec. 87.

This order or decree would seem to determine nothing more than that the account had been examined; that the items were *prima facie* sustained by the accompanying vouchers, and were such as the law entitled him to have allowed. There is nothing of the character of a judicial proceeding in all this. There is no-thing decreed to be *done,* suffered or omitted by any party; nor is there a condemnation of any thing to any use, corresponding with a proceeding *in rem.* The judgment or decree must appear. The order made does not profess to go beyond the face of the account, nor does it profess to adjudicate and settle any question of right or interest, as between the administrator and those interested in the settlement and distribution of the estate.

It is a general rule that the decision of a court can be conclu-sive only to the extent of the matter tried and determined. I have looked into the legislation and decisions of several of our sister states, as to the effect of the settlement of an administration ac-count by their probate jurisdictions. Some of them (as Tennes-see) declare by statute that such account, passed upon by the court, shall be *prima facie* evidence in favor of the administrator, while others are entirely silent as to the effect they shall have.

The statute of Rhode Island is, I believe, broader upon this sub-ject than that of any other state. It declares "that the settlement of the account of an administrator by the court of probate, shall be final and conclusive on all parties concerned therein, and shall not be subject to re-examination, in any way or manner whatsoever." In a case reported in 5 Mason 95, brought in the United States circuit court, for Rhode Island, the bill charged that the adminis-trator had received from an auxiliary administrator in England, an amount of assets, for which he had fraudulently failed to account in his settlement with the probate court, and prayed a de-cree for the assets thus concealed. The defendant relied upon the statute referred to, and upon the settlement made with the probate court, as a final and conclusive bar, to any further proceedings. This defence was overruled. It is true the decision seems to rest upon the grounds of fraud, but Judge Story remarks, "If there were no actual fraud, still if the assets have been wrongfully with-

held from the representatives of the legatee, it would be difficult to perceive how an omission to account for them would escape from the imputation of being a breach of the administration, bond." Thus holding, as I infer, that even in the absence of any charge or proof of actual fraud, if a proper case was otherwise made for chancery, as an omission to account fully, the decision of the probate court, notwithstanding the strong language of the statute referred to, would not be conclusive. In the case before me, there is no charge whatever of fraud, the bill simply charges errors and omissions in stating the account, which it seeks to correct. In a similar case where, to a bill filed in Indiana, the defendant plead in bar the settlement made by the administrator, in the probate court of that state, the supreme court, after stating that the question had been before settled by them, say, "It is there determined that the settlement in the probate court is to be taken as *prima facie* correct, but is not conclusive,—that on a proper case being made, the account may be re-examined in a court of chancery." See 2 Blackford Rep. 377. All the decisions of other states, which I have examined, give to such proceedings the effect of *prima facie* evidence only. 1 Har. and John. 232; 4 Munf. 368; 5 Rand. 319; 3 Bibb 316. The only statute upon the subject which I have found corresponding in exact terms with our own, is that of Alabama, in construing which the supreme court of that state held, that where a bill in chancery was filed by a distributee to compel payment of a distributive share from an administrator, the fact that the orphans' court had previously by a settlement final or otherwise, ascertained the amount to which the distributee was entitled, would not preclude the administrator from showing mistakes in the settlement of payments subsequent thereto, or of any other matter which in equity and good conscience, might be relied on. Stewart and Porter Rep. 133. This case would seem to be directly in point. If an administrator's account is not conclusive against him *a fortiori*, it should not be so against the distributee. From these views, and from the authorities referred to, I arrive at the conclusion, that the order of the orphan's court cannot be regarded as having the effect of a judicial proceeding either *in rem* or *in personam*. To allow the settled account of an administrator the effect of *prima facie* evidence of its correctness in his favor is, it

seems to me, going as far as the policy of the law requires, and as a due regard for the rights of those interested in the estate will admit. But it was argued by the defendant that if the complainants were entitled to any relief, and if the administrator's account could be opened and re-examined at all, it could only be done by the probate court, that tribunal having original and exclusive jurisdiction of the matter, and the decision of the High Court of Errors and Appeals, in the case of Blanton *v.* King, reported in 2 How. 856, was mainly relied on in support of this position. Although the question of jurisdiction is not technically and strictly presented by the state of the pleadings, yet if it shall be found that the jurisdiction belongs exclusively to another tribunal, the objection must prevail. By the constitution of this state, art. 4, sec. 16, it is provided, that "a superior court of chancery shall be established, with full jurisdiction in all matters of equity." The language of the constitution must be considered as conferring equity jurisdiction to the extent that it was limited and defined, by that country from which we derive all our knowledge upon the subject, so far as the English equity system is applicable under our institutions, and to the extent that it was recognized and practised in this state at the time of the adoption of the constitution, unless by some other provision in it, that jurisdiction is restricted or granted exclusively to some other tribunal. What is meant by "full jurisdiction in all matters of equity," as used in the constitution, and in what cases it attaches, can only be determined by a reference to those authorities which are the repository of equity jurisprudence.

Does this case present one of equitable cognizance, according to the recognized jurisdiction of courts of equity, at and before the adoption of the present constitution? In England, from the time of Lord Hardwick, down to the present day, the court of chancery has uniformly entertained jurisdiction for the purposes of distribution of an estate, and for the discovery and account of assets; 1 Atk. 491; 3 Atk. 527; 1 Ves. Jun. 172; 2 Peer Wms. 161, 212; 1 Vernon 134; 1 Sch. and Lef. 262. The ground upon which the jurisdiction rests is that of a trust; 3 John. Ch. Rep. 56. The administrator stands in the light of a trustee for distributees and creditors, ib. In the case of Decouch *v.* Savatier, 3 J. C. R. 190, the court held the relation between a distributee and administrato

was the relation of trustee and *cestui que trust*, and that it so far
partook of the character of a *pure technical trust*, that the plea of
the statute of limitations would not apply to it.   It would be need-
less to cite authorities, to prove that jurisdiction over trusts is one
of the most ancient and well established branches of equity cogni-
zance.   If the right of a distributee to call an administrator into
chancery for discovery of assets, for account, and for distribution,
constituted one of the fixed features of equity jurisprudence, as
known in England, and as practised in this country at the time of
the adoption of our constitution, that right may be readily sup-
posed still to exist, unless it shall be found that the jurisdiction has
been taken away and given exclusively to some other tribunal.
The constitution, Art. 4, sec. 18, provides that "a court of probate
shall be established in each county in this state, with jurisdiction
in all matters testamentary, and of administration in orphans' busi-
ness, and the allotment of dower, &c."   Does this section give to
the probate court, jurisdiction in a case situated like the present.
Those matters testamentary, or of administration, the jurisdiction
of which is originally if not exclusively, in acts of granting and
revoking letters of administration, in settling contests about the
right of administration, in taking bond and determining upon the
sufficiency of the securities, in appointing appraisers, in directing
an inventory to be returned, in appointing commissioners of insol-
vency, in auditing and allowing accounts, and finally, in whatever
else strictly pertains to the duties of an administrator, in his course
of administration, or in the language of the statute, other matters
pertaining to an orphans' court, or court of probate.   I conceive
that the constitution cannot be construed, as taking away from the
court of chancery, and conferring exclusively upon the probate
court, any matter of equity jurisdiction, which originally belonged
to courts of equity, nor as prohibiting a court of chancery from
interfering where the court of probate was inadequate to the relief
sought.   To hold that this court is powerless whenever the rela-
tion of parties is that of legatee and executor, or distributee and
administrator, would greatly cripple its usefulness, and in many
cases render nugatory, the rights of parties themselves.   According
to that rule, a distributee could not call for the preventive justice of
a court of equity, in restraining an administrator from wasting or

running off with the effects of his intestate. Nor could a legatee whose legacy was payable at a future day, or upon the happening of a contingency, bring his bill of *quia timet* for the purpose of having the payment secured; in these cases there could be no remedy in the probate court, or at best, but a lame and inadequate one. These and other instances that might be put, are obviously not embraced in the jurisdiction given by the constitution, to the court of probate, over "matters testamentary, and of administration."

The true line of distinction I take to be this: Wherever there is no remedy, or an imperfect one, in the probate court, [although the subject matter be testamentary or of administration, the court of chancery may rightfully interpose. It is important in practice that the two jurisdictions should be preserved separate and distinct; and chancery should only interpose to prevent a failure of justice. Pending the administration before the court of probate, and whilst the estate is in the course of final settlement, a court of equity should never interfere but upon the most urgent circumstances; and it may be well doubted whether even then the jurisdiction must not be transferred by a bill of *certiorari*. Ordinarily this court would only interfere when the proceedings of the court of probate were at an end, and when it appeared that that court had been made the instrument of injustice, either through fraud or by reason of its want of complete jurisdiction in the case; and this I understand to be the extent to which the Court of Errors and Appeals intended to go in the case of Blanton *v.* King *et al.* as explained and qualified in the subsequent case of McRae *v.* Walker *et al.* In that case Judge Trotter, in delivering the opinion of the court, says: "In all cases arising under an administration or the grant of letters testamentary, which concern the rights or the liabilities of the administrator, and when the powers of the probate court are ample to decide the question and to do full justice, the latter tribunal alone should determine in the first instance." The Judge says: "in laying down this proposition, I would not be understood to say that questions of litigation may not arise between the executor or administrator and those interested in the estate, which necessarily belong to a court of chancery. And in all cases where the powers of the probate court are found inadequate to do full and complete justice between the

parties, either on account of the subject matter or the want of power to compel either party to appear, the aid of a court of equity may be invoked." This case is clearly distinguished from the broad rule laid down in the case of Blanton *v.* King *et al.* and comes fairly within the exceptions to that rule, as recognized in the case of McRae *v.* Walker *et al.* The jurisdiction of the probate court over an administrator attaches upon his character as such; and when that ceases, the jurisdiction ceases with it. After the final settlement with the orphans' court, the relation of Griffith, as administrator of Harding ceased, and with it ceased the jurisdiction of the court over him; but if it did not determine at that point, it was, I apprehend, placed beyond doubt upon the death of Mr. Griffith. Giving to the orphans' court the plenary jurisdiction contended for, still I take it to be clear that an original bill could not be maintained in that court against an administrator of an administrator, for the purpose of overhauling and settling the accounts of the latter. In this case McMurran clearly sustains no privity or relation with the estate of Harding, since he is commissioned to administer the effects only of his intestate, Griffith, and not of Harding, of whom Griffith was administrator. Tol. Law Ex. 114; 2 Bl. Com. 506. There is, therefore, no party who could be proceeded against in the orphans' court, there being now no administrator of Harding's estate; and to deny the complainants a hearing here, would be virtually to close the courts of the country against them.

The plea must be overruled, with leave to the defendant to answer.

From this opinion of the Chancellor, the defendant appealed to the High Court of Errors and Appeals, and the following are the briefs of counsel and the opinion of the court in that tribunal. The high court reversed the decree of the Chancellor, but the latter still adheres to his own opinion.

McMurran, for appellant,

Cited 11 State Tr. 268; 1 Phil. Ev. 222; Ib. 226, 234; Ib. 242–44–45; 1 John. Cases, 436–92; Ambler's R. 763; Rev. Code, 27, 52, 30, 42; Laws, 1824, 107; Rev. Code, 89; 1 Starkie Ev. 195;

Rev. Code, 65, 58, 56–7, 60, 158, 35, 114; 1 Strange, 481; 2 Peters' Rep. 157; Ib. 162; 1 Phil. Ev. 248–54; 3 Wheaton, 246, 313–15; Ib. 319; 11 Serg. and R. 430; Hargrave, 451, 462–63; Ib. 471–72–73; Ib. 475; 1 Day's R. 170; 3 Ib. 318; Ib. 326; 4 Ib. 221; 2 Peters' R. 157; Ib. 163–67; 7 Serg. and R. 166; 14 Ib. 181–84; 11 Ib. 422, 429; 1 Browne's Rep. 64; 1 Rawle, 357, 360–61; 9 Vernon, 41–66, 77, 78; 7 Pick. 1, 6, 7; 3 Griff. L. Reg. 493; 7 Serg. and R. 171–72, 2 Howard, 856;

WINCHESTER, contra,

Cited 4 Serg. and R. 248; 2 Ib. 518; 1 Dallas, 176; 7 Serg. and R. 31. 14 Ib. 396; 12 Geo. III. c. 16; Story's Eq. 512; 9 Vermont, 78.

Mr. Chief Justice SHARKEY delivered the opinion of the court.

In 1820 the appellant's intestate, William B. Griffith and Mrs. Vertner, one of the appellees, were appointed administrator and administratrix, on the goods and chattels of Lyman Harding, who had died intestate, leaving his wife, now Mrs. Vertner, and an only son as his distributees. The bill charges that the entire administration and management of the estate was left to Griffith, who presented to the Orphans' court of Adams county, three accounts of his administration, two of which being annual accounts, were made out in his name alone. The third, being the final account and settlement of the administration, was made out as the account of both the administrator and administratrix, and in October, 1826, it was presented to the Orphans' court, where it was examined and allowed, and ordered to be reported to the county court for final approbation and allowance; and accordingly, at the December term, 1826, of the county court, it was reported, the vouchers examined, and it was received, allowed and recorded as the final settlement of the estate. The bill also charges that Mrs. Vertner, one of the complainants, paid to Winthrop S. Harding, the other distributee, his entire distributive share, and took from him a relinquishment and transfer of his interest, by which it is alleged that the complainants acquired a right to the residue of the estate. It also charges that in the several accounts there were errors and mistakes against the estate to the amount of about

13*

nine thousand dollars, for which errors and mistakes the complainants seek to open the administration accounts; and for relief for that amount against the estate of Griffith. The appellant, who was respondent in the court below, pleaded the final settlement and decree of the county court in bar to the relief, and answered the other portions of the bill. To this plea there was a demurrer, and thereon the chancellor decided the plea to be insufficient.

From this brief statement of the case, it is plain that the main question is, whether the complainants are concluded by the decree or order of the county court. This of course will depend on the power and jurisdiction of the court, and the nature of the adjudication. The judgment of a court of competent jurisdiction, directly made, is binding on parties and privies, except for fraud, which is not here charged. And this rule applies as well to the Orphans' or probate courts in this state, as to other courts. If, then, the county court of Adams county had jurisdiction of the subject matter and of the persons, and exercised it by a final adjudication directly on the question sought to be examined by this bill, its judgment cannot be opened by bill for that purpose, or questioned collaterally. By the first section of the Orphans' court law, Revised Code, 27, the Orphans' court was established and its powers defined. Jurisdiction was given to it to receive the probate of wills; to grant letters of administration; to appoint guardians to infants, idiots, lunatics and persons *non compos mentis;* to examine and allow the accounts of executors, administrators and guardians; "with full jurisdiction of all testamentary and other matters, pertaining to an Orphans' court or court of probate, in their respective counties." By the same act, the power to bring parties into court, and all other means or incidents necessary to carry out the jurisdiction are given. The right of appeal to the chancery or supreme court was secured. By the the eighty-seventh section the court was authorized to audit and allow all accounts of executors, administrators and guardians, forty days notice being first given, in case of final account, that at a given term it would be presented for allowance, at which time the account was open to be contested by any one interested, and the court authorized to hear the proofs, and decide accordingly, or it might, if necessary, refer the account to auditors for their investigation, on whose report the

court was to decree as the justice of the case might require. This final jurisdiction was changed by the act of 1824, so far, as to require the Orphans' court to make a report of all such accounts as might be presented, to the next term of the county court for final allowance, and by that court they were to be allowed in the same way that the Orphans' court had previously made the allowances or decrees, and so the law stood at the time this settlement was made.

Now it is evident that every administration must be finally settled somewhere. The very object of an administration is to bring the whole personal estate to an adjustment preparatory to a distribution. The power conferred on the Orphans' court, in conjunction with the county court, by the law as it stood at the date of this settlement, was ample; and these courts were created and organized with a view to the exercise of this important branch of jurisdiction. The jurisdiction, then, possessed by the Orphans' court, in conjunction with the county court, was co-extensive with the jurisdiction which is now possessed by the probate courts under the revised constitution. Being then conferred by law, it was perhaps not an exclusive jurisdiction, but it was at least ample, and the adjudications made by those courts on matters testamentary are not distinguishable in effect from those which have been made by the probate courts under the present system. By repeated decisions of this court we have not only held that the probate courts have exclusive original jurisdiction in testamentary matters, but that their judgments cannot be attacked or corrected except by appeal. The court, then, which passed on these accounts, had undoubtedly jurisdiction; and if it exercised it by making a final adjudication, its judgment must be conclusive. The parties interested were entitled to an appeal, and that was the only mode by which the errors could be corrected.

The plea avers that legal notice was given, and that the court passed upon the account, allowed it, and had it recorded as a final settlement of the estate. By the record, which is made an exhibit, it appears that the account was regularly presented to the Orphans' court, and by that court ordered to be reported to the county court, which was done; and the account, after an ex-

amination of the vouchers or evidences of its correctness, was received and allowed, or approved as a final account. This was such an adjudication as the law seems to require. The judgment might have been more formal, but it is substantially good. It is in every particular like the order of court made in the case of Gildart's heirs *v.* Starke, reported in 1 Howard, 450, which was held to be a sufficient judgment, and conclusive on all parties interested. The case cited is a direct authority in the present case; and would be decisive without other precedents, but others may be cited to the same effect. The case of McPherson *v.* Cunliff *et al.*, 11 Serg. and Rawle, 422, contains a recognition to its full extent, that the sentences and orders of a probate court are final and conclusive. The case of Jennison *v.* Hapgood, 7 Pickering, 1, is also directly in point. The orders and decisions of the probate court in Massachusetts, in matters over which it had jurisdiction, was held to be conclusive, although they are attacked, as they are in this case, by a bill in chancery for that purpose.

But it is insisted, that even if there was a judgment or sentence of the county court, these complainants are not bound by it, because they were not parties, and could not therefore have taken an appeal. It is altogether competent for the law to prescribe any mode of bringing parties into court. It may be done by process direct, or by notice. Publication is constructive notice to all persons interested, and when such mode of giving notice is prescribed by law, all parties are presumed to be duly notified. By the statute, an administrator is required to give forty days notice of his intention to settle his accounts by publication. The law has prescribed this as the mode of putting parties interested on their guard. Time and opportunity is thus given them to protect their rights, and all persons interested are parties to an administration from the beginning. The plea avers that notice was given, and it is now too late for the parties to say they were not notified; the demurrer admits the allegations in the plea.

It is further insisted that Winthrop S. Harding was not bound by the decree, because he was a minor, and that the complainants claiming as his assignee, stand in the same situation as he would if litigating this matter. We are not called on to decide on the

rights of Harding; whatever they may be, it is clear that these complainants cannot claim to be substituted to all his privileges. One of the complainants was the administratrix, who presented the final account. If it was erroneous, it was her error, and she cannot now take advantage of it. Whether she knew any thing of the account or not, it was in her name and must be regarded as hers. To say the least of it, if it was wrong it was her negligence. In any aspect, it is obligatory on her. It is an estoppel in law, and in whatever right she may claim, concludes her, and her husband who claims in the same right. It is now the case of an administrator seeking to set aside his own final account which was presented and decided on as correct, for an error which was then in favor of the administrator, and prejudicial to the estate, on account of subsequently acquired rights. It is like the case of a warrantor seeking to recover against his warrantee by title subsequently acquired.

Another ground taken in support of the relief prayed, is, that the error occurred by mistake. Although mistake is a subject of equity jurisdiction, yet it is not every mistake that equity will relieve against. The mistakes which may be corrected, occur mostly in matters *in pais*, in the execution of instruments, or the defective execution of powers, &c. But where there has been an adjudication by a court of competent jurisdiction, neither mistake in law or in fact can be corrected by original proceeding. If this could be done, litigation would be interminable. Hence, the general rule is, that equity will not relieve against the negligence or inattention of parties in a court of law. 1 Maddock, 77. The mistake here complained of, is one which the complainant was instrumental in causing. It arose, if at all, in a matter with which she is supposed to have been perfectly cognizant, and for the correction of which there was a plain and easy remedy at law. But supposing that she was ignorant of the errors in the account, still it amounts to nothing more than a case of negligence. It was her business to be informed, and if she omitted it, she must abide the consequences.

If this view of the case be correct, and we cannot doubt but it is, then relief is sought by original bill, against a judgment fully and finally made, by a court having full jurisdiction of the sub-

ject matter and of the persons, when all parties interested were legally notified of the proceeding, and attended by no circumstance, other than the mere negligence of the party, which lays a foundation for the interposition of a court of chancery. Under such circumstances we think the plea should have been received as a sufficient bar to the relief, and the decree of the chancellor must accordingly be reversed.